UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEANGELO J. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-1655-PLC |
| | ) |
| DANIEL KEEN, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of self-represented Plaintiff DeAngelo J. Williams, a pretrial detainee at St. Charles County Jail ("the Jail"), for leave to commence this action without prepayment of the required filing fee. [ECF No. 2.] Having reviewed the motion and the financial information submitted in support, the Court grants the motion and assesses an initial partial filing fee of $76.40. See 28 U.S.C. § 1915(b)(1). Additionally, after initial review of the complaint under Section 1915(e)(2)(B), the Court provides Plaintiff an opportunity to file an amended complaint. See also 28 U.S.C. § 1915A(b)(1).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner[1] bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner must make monthly payments of 20 percent

---

[1] The term "prisoner" includes "any person . . . detained in any facility who is accused of . . . violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program[s]." 28 U.S.C. § 1915(h) and § 1915A(c).

of the preceding month's income credited to his account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner forwards these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid.  Id.

In support of his motion, Plaintiff submitted an affidavit and a copy of the "Resident Transaction Details" for his Jail account during the period from September 12, 2020, to November 20, 2020.  [ECF No. 4.]  A review of Plaintiff's available financial information reveals an average monthly deposit of $382.00 and an average monthly balance of $70.69.  Plaintiff has insufficient funds to pay the entire filing fee.  Accordingly, the Court assesses an initial partial filing fee of $76.40, which is 20 percent of Plaintiff's average monthly deposits during the period of time available of record.

## Legal Standard on Initial Review

Under 28 U.S.C. Section 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if it is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See also 28 U.S.C. § 1915A(b).  To state a claim for relief a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Rinehart v. Weitzell, 964 F.3d 684, 687-88 (8th Cir. 2020) (addressing dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

at 679. A plaintiff must provide more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 678 (citing Twombly, 550 U.S. at 555).

Importantly, Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the plaintiff is entitled to relief. The statement must, however, include sufficient factual allegations to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam decision) (quoting Twombly, 550 U.S. at 555). A complaint filed by a self-represented plaintiff must allege facts which, if true, state a claim for relief as a matter of law. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (per curiam decision).

When engaging in pre-service review of a self-represented plaintiff's complaint a court accepts well-pleaded facts as true. White v. Clark, 750 F.2d 721, 722 (8th Cir. 1984) (per curiam decision). Additionally, a reviewing court liberally construes the complaint by a self-represented plaintiff. Erickson, 551 U.S. at 94; Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam decision) ("we hold [allegations in a pro se complaint] . . . to less stringent standards than formal pleadings drafted by lawyers"); Rinehart, 964 F.3d at 687. "[I]f the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015) (internal quotation marks omitted) (quoting Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004)). A federal court is not, however, required to: (1) assume facts that are not alleged, see Stone, 364 F.3d at 914-15, or (2) interpret procedural rules "to excuse mistakes by those who proceed without counsel," see McNeil v. United States, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff seeks relief under 42 U.S.C. Section 1983 from nine Defendants, each of whom Plaintiff alleges is an employee of the Jail. [ECF No. 1.] Specifically, Plaintiff sues the following

individuals, in both their individual capacities and their official capacities: Daniel Keen (the Director of Corrections), Jane Doe 1 (a nurse), Jane Doe 2 (a nurse), Jane Doe 3, Jane Doe 4 (a nurse), Jane Doe 5, Jane Doe 6 (a doctor), Jane Doe 7 (the Medical Director), and Nurse Unknown Dawn.  Alleging Defendants violated his rights under the Eighth and Fourteenth Amendments, Plaintiff: (1) pursues claims of deliberate indifference to his serious medical needs against Defendants Jane Does 1-6 and Nurse Unknown Dawn; and (2) pursues claims of deliberate indifference to his serious medical needs ("by [continuing to] turn[] a blind eye to the situation") and failure to train against Defendants Keen and Jane Doe 7.

In support of his claims, Plaintiff alleges the following.  Plaintiff arrived at the Jail on September 12, 2020 and told Defendant Jane Doe 1, a nurse, he had a dislocated shoulder from a car accident, needed an arm sling, and was supposed to have surgery that had not occurred because of COVID-19.  Defendant Jane Doe 1 told Plaintiff "she would get him to see the doctor" and "whatever he may need ASAP."

On September 26, 2020, Plaintiff wrote to the medical unit requesting an arm sling.  On the same date, non-party Nurse Megan responded to Plaintiff stating:  "You have a referral to see an orthopedic specialist.  It will be up to the doctor to determine your need for a sling and if you feel you cannot wait for the ortho I can set you up with our doctor for further evaluation[.]"  The following day Plaintiff again requested a sling because it was "hard for [him] to sleep," and non-party Nurse Megan said she would place him on that week's "MD list."

On October 2, 2020, Plaintiff requested an "extra mat" because his "arm [wa]s hurting."  Defendant Nurse Dawn responded by informing Plaintiff he did "not meet medical need for an extra mat."

On October 11, 2020, Plaintiff wrote to the medical unit complaining of shoulder and neck pain causing difficulties sleeping.  Non-party Nurse Corrine replied that the only pain medication

approved for Plaintiff was Tylenol, which he was "currently on." On the same day, Plaintiff complained to Defendant Nurse Jane Doe 2 about his pain and requested a doctor appointment. "for additional pain meds and [to] be examined due to not being able to get surgery asap." Defendant Nurse Jane Doe 2 allegedly responded by saying, "you should have thought about that before you came to jail. Put a slip in."

On October 17, 2020, Plaintiff wrote to the medical unit complaining of shoulder pain. Non-party Nurse Michael responded that Plaintiff would receive Tylenol "on the next medication pass," and advised him to continue wearing his sling and limiting movement as much as possible. During the medication pass, Plaintiff asked Defendant Jane Doe 3 for "other pain meds," including "Hydrocortisone Anusol Suppositories" ("Suppositories"). Defendant Jane Doe 3 looked in the computer and said "you don't get it[,] go write it up like you['ve] been doing."

On October 23, 2020, Plaintiff contacted the medical unit for Tylenol. Non-party Nurse Megan informed Plaintiff she would call the doctor for reinstatement of that medication.

On October 30, 2020, non-party Nurse Jessica told Plaintiff that the outside provider had said there was no "difference in his treatment or recovery if the procedure [wa]s put on hold, it [wa]s not considered medically necessary at this time." When Plaintiff told non-party Nurse Jessica that his back pain and muscle spasms were waking him up, she stated the doctor had provided him with a one-time order of Robaxin.[2] Plaintiff alleges he was "never seen [by] the doctor for th[at] medication" and "wasn't told the side effects nor anything about the medication."

On November 13, 2020, Plaintiff wrote the medical unit complaining of shoulder and back pain. Non-party Nurse Jessica replied that "this is a chronic on-going issue[,] you are currently prescribed Tylenol[, and] you have a follow up appointment scheduled with the doctor after you

---

[2] Robaxin is a "muscle relaxer. It works by blocking nerve impulses (or pain sensations) that are sent to [the] brain. Robaxin is used . . . to treat skeletal muscle conditions such as pain or injury." Definition at Drugs.com (available at https://www.drugs.com/robaxin.html (last visited Mar. 10, 2021)).

come off of quarantine." During the medication pass, Plaintiff asked Defendant Nurse Jane Doe 4 when he would receive "his other medication for pain," the Suppositories. Defendant Nurse Jane Doe 4 looked in the computer and told Plaintiff "you don't get that medication, you need to stop asking for medication you don't get."

On November 15, 2020, Plaintiff visited the medical unit and was given the Suppositories. During this visit, Plaintiff was told by an unnamed individual that this medication was prescribed for him in September 2020. Plaintiff appears to fault Defendant Jane Doe 5 for failing to administer the drug to him and states she continues to deny him the medication.

Plaintiff identifies Jane Doe 6 as a doctor at the Jail who, Plaintiff was told, refuses to see him "via video or in person until the whole jail is cleared of quarantine." Plaintiff states this refusal, "just le[aves him] in pain." Plaintiff identifies Defendant Jane Doe 7 as the Medical Director at the Jail and alleges that she and Defendant Keen "failed to properly train the medical staff" at the Jail and "continue[] to turn a blind eye to the situation mentioned in this case."

For his constant, ongoing pain and (1) the continuing denial of medication, an extra mat, and his requests to see a doctor for his pain; (2) the intentional denial of a sling for more than a month; and (3) the denial of "any and all surgery," Plaintiff seeks a preliminary injunction to "forc[e] the jail to allow [Plaintiff] to see the doctor, [and] be given the correct medication, [an] extra mattress, [and] surgery." Plaintiff also requests an award of $60,000 for punitive damages, $30,000 for compensatory damages, and an unstated amount of nominal damages.

**Discussion**

1. Section 1983 claims

"The essential elements of a constitutional claim under Section 1983 are (1) that the defendant acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. Schmidt v. City of Bella Villa, 557 F.3d 564,

571 (8th Cir. 2009)." McKay v. City of St. Louis, 960 F.3d 1094, 1099 (8th Cir. 2012). "[G]enerally a public employee [acts] under color of state law, while . . . exercising his [or her] responsibilities pursuant to state law." Waters v. Metro. State U., 52 Fed. Appx. 1, 2 (8th Cir. 2002) (unpublished per curiam decision) (internal quotation marks omitted) (quoting Roe v. Humke, 128 F.3d 1213, 1215 (8th Cir. 1997) (second alteration in original)). Because the allegations in the complaint show that Defendants' allegedly unconstitutional conduct occurred while they were engaged in their roles as jail employees caring for a detainee, Plaintiff's allegations sufficiently demonstrate at this stage of the proceedings that each Defendant was acting under color of state law with respect to his or her allegedly unconstitutional conduct.

For Defendants' unconstitutional conduct, Plaintiff alleges each Defendant violated Plaintiff's Eighth and Fourteenth Amendment rights to receive adequate medical care and medical care by properly trained personnel. A court must rely "on the [Fourteenth Amendment's] Due Process Clause rather than the Eighth Amendment [when] considering the claims of pretrial detainees." Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).[3] "Deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety." Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006). Therefore, a pretrial detainee's Fourteenth Amendment right to due process, which requires that a detainee not be punished, Bell, 441 U.S. at 535 n. 16, may be violated by an official's deliberate indifference to a detainee's objectively serious medical need, Ivey v. Audrain Cnty, Missouri, 968 F.3d 845, 848 (8th Cir. 2020), or by an

---

[3] The Fourteenth Amendment provides a detainee with at least as much protection as convicted prisoners. See, e.g., Morris v. Cradduck, 954 F.3d 1055, 1058 (8th Cir. 2020) (a detainee has the same rights to medical care under the Due Process Clause of the Fourteenth Amendment as an inmate has under the Eighth Amendment).

official's deliberately indifferent failure to train others, Walton v. Dawson, 752 F.3d 1109, 1117-18 (8th Cir. 2014).

When pursuing a Section 1983 claim, a plaintiff may assert the claim "against a public official acting in [the official's] individual capacity and in [the official's] official capacity." Baker v. Chisom, 501 F.3d 920, 923 (8th Cir. 2007). Plaintiff pursues his claims against all nine Defendants in both their official and their individual capacities.

2. Official capacity claims

"A suit against a government officer in [the officer's] official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010); accord Scott v. Lewis, 827 Fed. Appx. 613, 613 (8th Cir. 2020) (unpublished per curiam decision) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) for proposition that "naming officials in their official capacities is equivalent of naming the entity that employs them"). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity. Brandon[ v. Holt], 469 U.S. [464,] 471-72 [(1985)]). It is not a suit against the official personally, for the real party in interest is the [governmental] entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (emphasis in original).

Here, Plaintiff sues each of the nine persons named as Defendants in their official capacities. Plaintiff alleges that each of the nine Defendants is an employee of the Jail. To the extent Plaintiff sues Defendants in their official capacities, Plaintiffs' claims are against Defendants' employer, or, based on the allegations in the complaint, the Jail itself. A jail, however, is not an entity amenable to suit under Section 1983. Maxwell v. Linn Cnty. Corr. Ctr., 310 Fed. Appx. 49, 49 (8th Cir. 2009) (unpublished per curiam decision) (affirming the dismissal of a Section 1983 action against a county correctional center upon concluding the plaintiff "failed to state a viable claim" because a county jail is not a legal entity amenable to suit); Owens v. Scott

Cnty. Jail, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam decision) (affirming summary judgment for a county jail in a Section 1983 lawsuit because "county jails are not legal entities amenable to suit" (citing De La Garza v. Kandiyohi Cnty. Jail, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (unpublished per curiam decision)).  But see Mick v. Raines, 883 F.3d 1075, 1079 (8th Cir. 2018) (finding in a Section 1983 action against county sheriffs and jail officers sued only in their official capacity, and without discussing whether the jail was an entity subject to a Section 1983 claim, that "the district court properly treated . . . as the actual defendants" the county and the regional jail); Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000) (concluding in relevant part and without discussing whether the jail was amenable to a Section 1983 lawsuit that the plaintiff had not exhausted his administrative remedies with respect to claims regarding medical care pursued against the county jail facility and three of its employees, who were sued "personally and in their official capacities").  Due to the decisions in which the Eighth Circuit expressly addressed a jail's amenability to suit under Section 1983, the Court need not further address Plaintiff's official capacity claims against all Defendants because they are subject to dismissal as pursued against an entity not amenable to suit under Section 1983.

    3.   Individual capacity claims

An individual-capacity suit under Section 1983 "seek[s] to impose personal liability upon a government official for actions . . . take[n] under color of state law."  Kentucky, 473 U.S. at 165.  "A victory in a personal-capacity [or individual-capacity] action is a victory against the individual defendant, rather than against the [governmental] entity that employs" the defendant.  Id. at 167–68.

To state an individual-capacity claim under Section 1983, "a plaintiff must plead that [a] Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.  More specifically, a plaintiff pursuing a cognizable

individual-capacity Section 1983 claim must allege that the defendant official "was personally involved in or had direct responsibility for incidents that injured" the plaintiff. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir.1985); accord Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999). Additionally, a plaintiff must allege a "personal loss that would support [the plaintiff]'s right to recover for those alleged violations." Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001) (citing Martin, 780 F.2d at 1337).  A complaint fails to state an individual-capacity claim under Section 1983 when it does not include adequate factual allegations demonstrating that each defendant was "responsible for," Duffie v. City of Lincoln, 834 F.3d 877, 881 (8th Cir. 2016), or "personally involved in," Jones v. Roy, 449 Fed. Appx. 526, 526-27 (8th Cir. 2011) (unpublished per curiam decision), the allegedly unconstitutional conduct.

For Section 1983 claims pursued in an individual capacity against a supervising official, that official is not liable for the conduct of the official's subordinates under a theory of respondeat superior or supervisor liability but may be liable for the supervising official's own misconduct, including direct participation in the alleged constitutional violations. Briscoe v. County of St. Louis, Missouri, 690 F.3d 1004, 1011 (8th Cir. 2012). In addition to liability for his or her own allegedly unconstitutional conduct, a supervising official may be individually liable for "failure properly . . . [to] train the offending employee[s]" who caused the alleged constitutional violations. Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014).

(a) <u>All Defendants' allegedly unconstitutional medical care</u>

To establish an official's individual liability for an unconstitutional provision of or absence of medical care, "a detainee must demonstrate an objectively serious medical need that the defendant knew about and deliberately disregarded. [Barton v. Taber, 908 F.3d 1119,] 1124 [(8th Cir. 2018)]." Morris v. Cradduck, 954 F.3d 1055, 1058 (8th Cir. 2020). A serious medical need is one "diagnosed by a physician as requiring treatment" or one that is "so obvious that even a layperson would easily

recognize the necessity for a doctor's attention." Barton, 908 F.3d at 1124 (internal quotation marks and citation omitted).

To show that a defendant "actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish [the defendant had] a mental state akin to criminal recklessness: disregarding a known risk to the [detainee's] health." Id. (internal quotation marks and citation omitted). "'It is not enough merely to find that a reasonable person would have known [about the risk], or that [the officer] should have known' about the risk." Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009) (alterations in original) (quoting Farmer v. Brennan, 511 U.S. 825, 843 n. 8 (1994)). For, deliberate indifference with respect to medical care for purposes of a Section 1983 claim requires "more than negligence, more even than gross negligence." Johnson v. Leonard, 929 F.3d 569, 575 (8th Cir. 2019) (internal quotation marks and citation omitted). An official who knows about and reasonably responds to a substantial risk to the health or safety of a person in custody may not be liable under Section 1983 even if the harm is not averted. Farmer, 511 U.S. at 844; accord Johnson, 929 F.3d at 578 (finding dentist not liable under Section 1983 for any delay in providing the plaintiff dental care because he "provided consistent, adequate treatment responding to" the plaintiff's complaints and "was not deliberately indifferent").

An official may violate his or her constitutional obligation to provide medical care to those in custody when, in response to a serious medical need, the official "intentionally den[ies] or delay[s] access to medical care or intentionally interfer[es] with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104–05 (1976); Dadd v. Anoka Cnty., 827 F.3d 749, 756-57 (8th Cir. 2016). Although "[t]he Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish," Jenkins v. County of Hennepin, Minn., 557 F.3d 628, 633 (8th Cir. 2009), "'[d]elay in the provision of treatment or in providing examinations can violate [detainees'] rights when [their] ailments are medically serious or painful in nature.'

Johnson-El v. Schoemehl, 878 F.2d 1043, 1055 (8th Cir. 1989)," Dadd, 827 F.3d at 755.  Accord Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010) (citing Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 829 (7th Cir. 2009) as "collecting cases holding that 'delays in treating painful medical conditions, even if not life-threatening,'" may support a Section 1983 claim). Additionally, conditions interfering with sleep, including a failure to provide a device for a health condition adversely affecting sleep, may violate the constitution.  See, e.g., Walton v. Dawson, 752 F.3d 1109, 1120 (8th Cir. 2014) (stating that "sleep is critical to human existence, and conditions that prevent sleep" may violate the constitution); Meloy v. Schuetzle, 230 F.3d 1363, *1-2 (8th Cir. 2000) (unpublished per curiam decision) (concluding a plaintiff's allegations that a doctor and a nurse failed promptly to provide equipment prescribed to treat the plaintiff's obstructive sleep apnea "were sufficient to state a" deliberate-indifference claim).

While an official's minimal contact with a plaintiff does not necessarily avoid the official's Section 1983 liability regarding medical care, see Dadd, 827 F.3d at 755-56 (citing Robinson v. Moreland, 655 F.2d 887, 890 (8th Cir. 1981) for the proposition that one contact with the plaintiff after an injury was enough to establish Section 1983 liability), there is "no constitutional right to receive a particular or requested course of [medical] treatment," Shelton v. McLeod Cnty., 770 Fed. Appx. 307, 308 (8th Cir. 2019) (unpublished per curiam decision) (citing Meuir v. Greene Cnty. Jail Employees, 487 F.3d 1115, 1118-19 (8th Cir. 2007)).  Additionally, a detainee's "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Fourte v. Faulkner Cnty., Ark., 746 F.3d 384, 387 (8th Cir. 2014) (internal quotation marks and citation omitted); accord Leonard, 929 F.3d at 576 (citing Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) for the proposition that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation" (internal quotation marks omitted)).

Accepting Plaintiff's well-pleaded facts as true and liberally construing Plaintiff's factual allegations, the Court finds as follows with respect to the allegations supporting Plaintiff's Section 1983 claim for Defendants' deliberate indifference to Plaintiff's serious medical needs.  Plaintiff alleges that Nurse Jane Doe 1 informed him that "she would get him to see the doctor" and "whatever he may need ASAP" after he told her at intake about his dislocated shoulder, his need for an arm sling, and the possibility he needed surgery.  Plaintiff provides no information regarding any further conduct Jane Doe 1 engaged in with respect to Plaintiff's medical care during the relevant time period.  Rather than demonstrate this Defendant's deliberate indifference, these factual allegations reveal her reasonable concern about Plaintiff's serious medical needs.

Plaintiff alleges he complained about his pain to Nurse Jane Doe 2 and she told him to "put a slip in."  Plaintiff also alleges that on one occasion in October 2020 he asked unidentified Jane Doe 3 and on one occasion in November 2020 he asked Nurse Jane Doe 4 for additional pain medication (including the Suppositories) and, after reviewing his chart, they each responded that he was not prescribed additional pain medication.  At most, Plaintiff's allegations show either that these Defendants may have acted negligently in failing to provide him with pain medication or that Plaintiff disagreed with these Defendants' treatment decisions.   These one-time occurrences do not support Plaintiff's Section 1983 claim that each of these three Defendants is personally liable for an allegedly deliberate indifference to Plaintiff's need for pain medication.

In November 2020, after the requests to Jane Does 2, 3 and 4, Plaintiff alleges he was told by an unidentified person that the Suppositories were prescribed for him in September 2020, but unidentified Jane Doe 5 denied him the pain medication.  Plaintiff does not state how or when Jane Doe 5 denied him the medication or if she is a medical professional qualified to provide prescribed medication.

Plaintiff further alleges (1) that he was told by an unidentified person at an unidentified time that Jane Doe 6, a doctor, refuses to see him "by video or in person until the whole jail is cleared of quarantine," and (2) on one occasion Nurse Dawn refused his request for "an extra mat." Nothing in Plaintiff's allegations demonstrates that Jane Doe 6 had personal knowledge of Plaintiff's serious medical needs.   As with the allegations against Defendant Jane Doe 5, the allegations against Defendants Jane Doe 6 and Nurse Dawn are conclusory, lack factual detail and support, are not entitled to a presumption of truth, and require this Court to assume facts not alleged, which this Court may not do.  See, e.g., Miles v. Corizon Healthcare, 2:18-CV-96 RLW, 2019 WL 2085998, at *4 (E.D. Mo. May 13, 2019) (concluding an allegation that a defendant "refused to allow [the plaintiff] access to any further treatments or diagnosis," "without any additional information, is nothing more than a conclusory statement and cannot suffice to state a cause of action" under Section 1983).

In his complaint, Plaintiff identifies Defendant Jane Doe 7 as the Medical Director at the Jail and alleges that she and Defendant Keen (the Director of Corrections at the Jail) "continue[] to turn a blind eye to the situation mentioned in this case."  The Court construes this allegation as Plaintiff's effort to support these two Defendants' individual liability for their deliberate indifference to Plaintiff's serious medical needs (a dislocated shoulder and ongoing pain, which in part interfered with his ability to sleep).  Nothing in this conclusory allegation shows that either of these two Defendants (1) had knowledge of Plaintiff's serious medical needs, or (2) either personally participated in or were personally responsible for the care Plaintiff did or did not receive for those needs.  As with the allegations against Defendants Jane Doe 5, Jane Doe 6 and Nurse Dawn, the allegations against Defendants Jane Doe 7 and Keen  are conclusory, lack factual detail and support, are not entitled to a presumption of truth, and require this Court to assume facts not alleged, which this Court may not do.

Upon pre-service review the Court concludes that Plaintiff's Section 1983 claims for each Defendant's allegedly deliberate indifference to Plaintiff's serious medical needs are subject to dismissal for failure to state a claim for relief.[4]  Because, however, Plaintiff's pro se allegations support the possibility that Defendants' delay or denial in providing Plaintiff relief through a device (an extra mat)[5] and medication to alleviate a serious medical condition, in particular one (a dislocated shoulder) that is painful and disrupted Plaintiff's sleep, the Court gives Plaintiff an opportunity to file an amended complaint if he intends to pursue a Section 1983 claim for the deliberate indifference to Plaintiff's serious medical needs related to his dislocated shoulder.

(b) Defendant Keen's and Defendant Jane Doe 7's (the Medical Director's) allegedly unconstitutional failure to train the Jail's medical staff

To demonstrate a defendant's individual liability under Section 1983 arising out of a failure to train, a plaintiff must establish that the defendant's "failure to remedy [a] known pattern of unconstitutional acts [by subordinates] proximately caused his injury."  Williams v. Davis, 200 F.3d 538, 539 (8th Cir. 2000) (per curiam) (citing Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997)); accord McGuire v. Cooper, 952 F.3d 918, 923 (8th Cir. 2020) (an official may be liable under Section 1983 if the failure to train amounts to deliberate indifference to the rights of those with whom the officials come in contact and the alleged failure to train actually causes the alleged constitutional violation).  In particular, the plaintiff "must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts[, which] requires a showing that

---

[4] The Court also notes certain entries on Plaintiff's "Resident Transaction Details" [ECF No. 4] appear to contradict the deliberate indifference claims regarding his medical care that are alleged in his complaint.  For example, a September 22, 2020, line item states Plaintiff had a "Dr. Appt." and was provided with "anusol hc."  Additionally, an October 30, 2020 line item indicates he was provided with Robaxin.  Additional line items also reflect he was provided with Tylenol twice daily and other prescribed medications.

[5] Other than letting Defendant Nurse Jane Doe 1 know at intake that Plaintiff needed an arm sling for his dislocated shoulder, Plaintiff makes no allegations that any Defendant was involved in delaying Plaintiff's receipt of an arm sling.  Instead, Plaintiff's allegations regarding denial of or delay in receiving an arm sling focus on conduct of individuals who are not named as defendants.

the supervisor had notice that the training procedures . . . were inadequate and likely to result in a constitutional violation." Andrews, 98 F.3d at 1078.  Accord Barton, 908 F.3d at 1125; Livers v. Schenck, 700 F.3d 340, 356 (8th Cir. 2012).  In other words, for a failure to train claim, a pretrial detainee "must prove the [jail] officials personally knew of the constitutional risk posed by their inadequate training . . . and proximately caused [the detainee's] injury by failing to take sufficient remedial action." Walton, 752 F.3d at 1118 (emphasis in original) (citing Farmer, 511 U.S. at 837-39).

In his complaint, Plaintiff identifies Defendant Jane Doe 7 as the Medical Director at the Jail and summarily alleges that she and Defendant Keen "failed to properly train the medical staff" at the Jail.  Plaintiff makes no other allegations to support his failure-to-train claim.  No allegation demonstrates there was a pattern of similar allegedly unconstitutional conduct by untrained medical staff at the Jail or that either of these two Defendants knew about such a pattern.  Nor does any allegation show these two Defendants had notice that any course of training for the Jail's medical staff was deficient in any particular respect.  Plaintiff's failure-to-train claim is conclusory, lacks factual detail and support, is not entitled to a presumption of truth, and requires this Court to assume facts not alleged, which this Court may not do.

Plaintiff's Section 1983 claims against all Defendants in their individual capacities are subject to dismissal for failure to state a claim because Plaintiff has not pleaded facts sufficient to show how: (1) any Defendant was deliberately indifferent to his serious medical needs; or (2) either the Medical Director or Defendant Keen engaged in a deliberately indifferent failure to train.  Because Plaintiff is self-represented, the Court provides him an opportunity to file an amended complaint to attempt to cure his pleading deficiencies.

**Instructions on Amending the Complaint**

Plaintiff is warned that an amended complaint completely replaces the original complaint, and so it must include all claims Plaintiff wishes to pursue. See In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). The Court deems abandoned and does not consider any claims set forth in the original complaint that are not included in the amended complaint. Id.

Plaintiff should submit the amended complaint on the Court's Section 1983 civil rights complaint form, which the Clerk will send him. See E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs . . . should be filed on Court-provided forms"). The amended complaint must comply with the Federal Rules of Civil Procedure and include all of Plaintiff's claims against all defendants. See Fed. R. Civ. P. 7(a)(1), 8(a).

If the amended complaint is handwritten, the writing must be legible. Whether the information is typed or printed, Plaintiff should fill out the complaint form in its entirety.

In the "Caption" section of the Court-provided form, Plaintiff needs to clearly name every defendant he intends to sue. Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption on the form, Plaintiff may add additional sheets of paper. Plaintiff must avoid naming any defendant that is not directly related to his claim(s).

In general, fictitious parties may not be named as defendants in a civil action. See Phelps v. United States, 15 F.3d 735, 738-39 (8th Cir. 1994). An action may proceed against a party whose name is unknown, however, if the complaint makes sufficiently specific allegations to permit ascertaining the identity of the party after reasonable "discovery or the court's intervention" (by, for instance, requiring the defendants to disclose the Doe defendant's identity). Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985); accord Perez v. Does 1-10, 931 F.3d 641, 645, 646 (8th Cir.

2019) (district court properly dismissed Doe defendants because allegations were not "specific enough"); Fulghum v. Allen, 626 Fed. Appx. 653 (8th Cir. 2015) (unpublished per curiam decision) (remanding with instructions to reinstate two Doe defendants to allow the plaintiff "the opportunity to ascertain their identities through discovery"). Therefore, to avoid dismissal of a Doe defendant, Plaintiff's allegations against any Doe defendant must allow the identification of the Doe defendant.

In the "Statement of Claim" section, Plaintiff should provide a short and plain statement of the factual allegations supporting his claim. Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The amended complaint should only include claims that arise out of the same transaction or occurrence. In other words, Plaintiff should only include claims that are related to each other. Fed. R. Civ. P. 20(a)(2). Alternatively, Plaintiff may choose a single defendant and set forth as many claims as he has against that defendant. Fed. R. Civ. P. 18(a).

In structuring his amended complaint, Plaintiff should begin by writing a defendant's name. In separate, numbered paragraphs under that name, Plaintiff should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If Plaintiff is suing more than one defendant, he should follow the same procedure for each defendant.

If Plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that Section 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). The "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." Neubauer v. FedEx Corp., 849 F.3d 400, 404 (8th Cir. 2017).

If Plaintiff is suing multiple defendants, it is important he establish the responsibility of each defendant for harming him. That is, for each defendant, Plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. It is not enough for Plaintiff to make general allegations against all the defendants as a group. Rather, Plaintiff needs to provide the role of each named defendant in this case, in order that each defendant can receive "fair notice of the nature and basis or grounds for" the claim(s) against the defendant. Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) (internal quotation marks and citation omitted).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial filing fee of $76.40 within thirty (30) days after the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that, within thirty (30) days after the date of this Order, Plaintiff shall submit an amended complaint in accordance with the instructions set forth herein.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to Plaintiff two blank Prisoner Civil Rights Complaint forms. Plaintiff may request additional forms as needed.

**IT IS FINALLY ORDERED** that, if Plaintiff fails to timely comply with this Order, the

If Plaintiff is suing multiple defendants, it is important he establish the responsibility of each defendant for harming him. That is, for each defendant, Plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. It is not enough for Plaintiff to make general allegations against all the defendants as a group. Rather, Plaintiff needs to provide the role of each named defendant in this case, in order that each defendant can receive "fair notice of the nature and basis or grounds for" the claim(s) against the defendant. Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) (internal quotation marks and citation omitted).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial filing fee of $76.40 within thirty (30) days after the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that, within thirty (30) days after the date of this Order, Plaintiff shall submit an amended complaint in accordance with the instructions set forth herein.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to Plaintiff two blank Prisoner Civil Rights Complaint forms. Plaintiff may request additional forms as needed.

**IT IS FINALLY ORDERED** that, if Plaintiff fails to timely comply with this Order, the

Court will dismiss this action without prejudice and without further notice.

                                                         PATRICIA L. COHEN
                                                        UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of March, 2021